## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN KIRK MATTHEWS,

     Plaintiff,

v.                           CASE NO. 8:23-cv-2277-WFJ-TGW

QUICK FREELANCERS and
JAMIE BAXTER,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

The plaintiff filed an affidavit of indigency pursuant to 28 U.S.C. 1915 (Doc. 9), seeking a waiver of the filing fee for his complaint. His complaint appears to assert claims of hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (see Doc. 1; Doc. 1-1). For the reasons discussed, I recommend that the plaintiff's claims be dismissed with leave to amend.

I.

Under 28 U.S.C. 1915(a)(1), the court may authorize the filing of a civil lawsuit without prepayment of fees if the plaintiff submits an affidavit that includes a statement of all assets showing an inability to pay the filing fee and a statement of the nature of the action which shows that he

is entitled to redress. Even if the plaintiff proves indigency, the case shall be dismissed if the action is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. 1915(e)(2)(B)(i), (ii).  The latter requires that the complaint allege facts from which the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.

In this matter, the plaintiff worked as a "freelancer" for defendant Quick Freelancers.[1] The lawsuit appears to center around a few altercations that the plaintiff had with a co-worker and at least one manager. Thus, the plaintiff states (Doc. 1-1, pp. 6–7)[2]:

> On October 15, 2022, John Kirk Matthews was present at the Florida Aquarium when he was approached by Mike M. Manager at Qwick Freelancers App. For the Tampa, FL region. Mike approached Mr. Matthews making the allegations that Mr. Matthews smelled like marijuana . . . . Mr. Matthews notified Qwick Freelancers administration by via text message of the incident. Mr. Matthews complained and explained to Qwick Freelancers administration that marijuana is considered medication.

---

[1] The second defendant, Jamie Baxter, appears to have only been named because of his status as "co-founder/CEO" of the defendant company.

[2] There are several grammatical errors in the exhibit, namely the frequent use of periods where a sentence has not ended. Thus, not all of the periods were included where it was presumed the plaintiff intended for the sentence to not yet end.

On December 8th, 2022, Mr. Matthews was present at the Florida Aquarium assigned as a dishwasher. Mr. Matthews was present washing dishes when another Qwick Freelancer by the name of Kayla . . . approached him with disrespect. . . . Mr. Matthews reported the incident of the unprofessionalism. . . . On December 14, 2022, Mr. Matthews was present and assigned as a dishwasher at the Florida Aquarium when Kayla the freelancer approached him in a very upset manor [sic] stating too [sic] Mr. Matthews upon entry too [sic] start his shift that "we can't work together Mike told me you made a complaint about me and if you got a problem with me you can address me directly.["] Mr. Matthews then stated that "I have a right to [sic] make a complaint and what you're [sic] doing is retaliation. ". . . Mr. Matthews notified Qwick Freelancers Administration for the Tampa region of the incident. . . . In the complaint Mr. Matthews complained of the hostile work environment.

On January 11, 2023, Mr. Matthews was present at J.P. Morgan Chase Center subcontracting as a dishwasher facilitated through Qwick Freelancers App . . . Mr. Matthews was approached by a manager and was yelled at and threatened for taking a lunch break. . . . Mr. Matthews notified Qwick Freelancers App of the incident.

On December 30th, 2022 after receiving the background check Qwick Freelancers App stated no negative adverse action would be taken against Mr. Matthews for the information in the background check. In Qwick Freelancers arbitration code Qwick states that some jobs may not qualify you for work do [sic] to [sic] backgrounds but Qwick Freelancers App never stated that they don't facilitate convicted felons they stated certain felonies would prohibit you

3

from certain jobs/shifts. Mr. Matthew['s] termination was not lawful without having list of non prohibitions. It's also retaliation/discrimination. The background check was turned in to Qwick Freelancers App on January 4th. Mr. Matthews was terminated 7 days later after making a complaint . . . and after Qwick Freelancers App stated they would send the complaint to Qwick['s] legal team for investigation. Also for the complaints Mr. Matthews filed in the past on Mike M. the manager of Tampa Region.

Thus, it appears that the plaintiff's hostile work environment claim stems from his treatment, such as being yelled at by co-workers and managers.[3] Further, the plaintiff's retaliation claim appears to be based on his termination, which the plaintiff avers was caused by his complaints, but also that he was impermissibly fired for having a felony conviction.

To establish a claim of a hostile work environment, the plaintiff must show, for example, "(1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of either

---

[3] Notably, the plaintiff includes extraneous information, which appears to relate to the unauthorized use of his personal information. This information was disregarded.

vicarious or direct liability." <u>Adams</u> v. <u>Austal, U.S.A., L.L.C.</u>, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

The plaintiff has failed to satisfy several elements. Thus, the plaintiff has not stated that he is a member of a protected class and, for instance, he does not appear to assert that his treatment was due to his race or any other protected category. Moreover, the plaintiff has failed to establish that the harassment was "severe or pervasive." As indicated, the plaintiff identifies a handful of incidents where he claims either a co-worker or a manager yelled at him about his work pace or taking an impermissible lunch break. These instances do not reach the required level of severity or pervasiveness to state a hostile work environment claim. <u>See</u> <u>McCann</u> v. <u>Tillman</u>, 526 F.3d 1370, 1378 (11th Cir. 2008) (providing that courts examine "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'") (internal citations omitted)).

In order to state a claim for retaliation under Title VII, the plaintiff must show that "(1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity." <u>Chandamuri</u> v. <u>Georgetown</u>

University, 274 F.Supp. 2d 71, 84 (D.D.C. 2003). The plaintiff's retaliation claim is also deficient. Thus, the plaintiff has not clearly stated that he engaged in a protected activity. In his complaint, the plaintiff indicates that he received a Notice of Right to Sue letter in response to an EEOC complaint (see Doc. 1, p. 5). Further, the plaintiff has set forth some facts indicating that his termination occurred shortly after his complaint. Raspanti v. Four Amigos Travel, Inc., 266 Fed. Appx. 820, 823 (11th Cir. 2008) (stating that the element of causation can be proved by showing "close temporal proximity" between the time that the defendant employer learned of the protected activity and the alleged retaliatory conduct). However, these facts are not adequately stated. Thus, the claim is deficient.

Accordingly, the plaintiff's complaint does not comply with Federal Rule of Civil Procedure 8(a)(2). The purpose of this rule is to give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Consequently, a plaintiff's obligation to provide the grounds of his "entitlement to relief" requires more than labels and conclusions. Id. The pleading specificity standard "'requires a complaint with enough factual matter (taken as true) to suggest' the required element." Watts v. Florida International University, 495 F.3d 1289, 1295 (11th Cir. 2007) (internal

6

citation omitted).  The complaint also does not comply with Federal Rule of Civil Procedure 10(b) which provides that "[a] party must state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence … must be stated in a separate count."  Fed. R. Civ. P. 10(b).

Under these circumstances, however, it is appropriate to allow the plaintiff an opportunity to file an amended complaint. See Troville v. Venz, 303 F.3d 1256, 1260 n.5 (11th Cir. 2002) (Section 1915(e)(2)(B)(ii) does not allow the district court to dismiss an *in forma pauperis* complaint without allowing leave to amend when required by Fed.R.Civ.P. 15(a)). I therefore recommend that the complaint and the Motion to Proceed *In Forma Pauperis* (Doc. 9) be dismissed without prejudice.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE


DATED: April 23, 2024.

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline

7

to file written objections.   28 U.S.C. 636(b)(1)(C).   Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.